# HENDLEY *v.* CLARK.

AFFIDAVITS; JUSTICES OF THE PEACE; CERTIORARI; CONCURRENT JURISDICTION.

1. Affidavits appearing in the .record on an appeal allowed from an order refusing to quash a writ of *certiorari* to a justice of the peace, will not be considered by this court when there is nothing in the record to show they were read before the lower court and acted upon by it, or that objection was made to them or exception taken to any ruling of the court regarding them.

2. A cause cannot be removed from a justice of the peace to the Supreme Court of this District by writ of *certiorari* upon the sole ground of concurrent jurisdiction over the subject-matter of the suit.

3. A writ of *certiorari* served upon a justice of the peace after judgment rendered by him, is ineffectual to remove the cause to the court issuing the writ, and cannot be made to serve the purpose of a writ of error or appeal.

No. 541.   Submitted March 2, 1896.   Decided March 17, 1896.

HEARING on an appeal by the plaintiff (leave to prosecute the same having been previously granted), in a suit before a justice of the peace, from an order of the Supreme Court of the District of Columbia overruling a motion to quash a writ of *certiorari* to the justice.   *Reversed.*

The COURT in its opinion stated the case as follows :

This is a special appeal allowed under the discretionary power vested in this court to allow appeals from interlocutory orders of the Supreme Court of the District of Columbia.

The appellants, James W. Hendley and Warren W. Biggs, instituted proceedings before a justice of the peace for the recovery of an alleged indebtedness amounting to $286.95, stated to be due to them from the appellee. This was on December 17, 1895, on which day summons was issued

by the justice, returnable on December 20, 1895, at 11 A. M. The summons was served on the day following its issue, that is, on December 18. Then, as shown by the record, on December 20, "plaintiffs appeared and proved their claim by the oath of Warren W. Biggs, one of the plaintiffs. Defendant did not appear." And there was "judgment for plaintiffs for $275 debt and $1.65 costs of suit."

On the same day on which this judgment was rendered (December 20, 1895), a petition was filed by the appellee, Jacob P. Clark, in the Supreme Court of the District of Columbia, for a writ of *certiorari* to the justice of the peace to require him, on the ground of the concurrent jurisdiction of that court with justices of the peace, to hold cognizance of suits involving sums of more than $100 and not exceeding $300, under the act of Congress of February 19, 1895 (28 Stat. 668), to certify and transmit the record and proceedings to that court for trial according to law. This petition, which had been sworn to on the preceding day (December 19, 1895), was presented to the proper justice of the Supreme Court of the District on the morning of December 20, 1895, for the allowance of the writ; and the writ was then and there directed to be issued as prayed in the petition. At what hour this occurred, does not appear from the record; nor does it appear at what hour the writ was served on the justice of the peace, or at what hour the judgment was rendered by the latter in the proceedings instituted before him. But his return to the writ contains the following statement: "More than one hour elapsed after judgment when I received the annexed writ of *certiorari*, whereby the proceedings before me in said suit were stopped."

Upon this return, the appellants, as plaintiffs before the justice and acting as respondents for him, moved to quash the writ on four several grounds: 1st. Because judgment had already been entered by the justice before service of the writ upon him; 2d. Because at the time of the service

of the writ the court had appellate and not concurrent jurisdiction ; 3d. Because the writ had been improvidently issued ; 4th. Because the proper proceeding to bring the cause before the court, after judgment rendered by the justice, was by appeal and not by writ of *certiorari*.

Before the day for the hearing of the motion to quash, affidavits were filed on behalf of the appellee, which are understood to have been read at that hearing. One of these affidavits was that of the appellee himself setting forth the merits of his defence to the claim of the appellants against him ; and the other was that of his counsel setting forth the circumstances of the time of the issue and service of the writ of *certiorari* upon the justice.

The court, it is conceded, refused to quash the writ, although the order to that effect does not appear in the record. And thereupon a petition for a special appeal was presented to this court, and the appeal was allowed.

*Mr. D. S. Mackall* and *Mr. J. A. Macdel* for the appellants :

1. Although the Supreme Court of the District of Columbia had concurrent jurisdiction with the justice's court over the subject-matter of the suit, yet the justice's court having first acquired jurisdiction thereof, it had the power to proceed with the suit and to render final judgment therein. Where two courts have concurrent jurisdiction, whichever court first acquires jurisdiction of a cause will retain it throughout. *Winn* v. *Albert*, 2 Md. Ch. 42 ; *Brown* v. *Wallach*, 4 G. & J. 479 ; *Brooks* v. *Delaplaine*, 1 Md. Ch. 351 ; *Taylor* v. *Fort Wayne*, 47 Ind. 274 ; *Peck* v. *Jenness*, 7 How. 612 ; *Smith* v. *McIver*, 9 Wheat. 532.

There is no statutory writ of *certiorari* in the District of Columbia ; the only writ of *certiorari* known here is the common law writ. The common law writ of *certiorari* was issued by superior court and directed to an inferior tribunal requiring the latter to send its record to the superior court for inspection. By such writs inferior tribunals were kept

within the limits of their jurisdiction ; and the only question tried in the superior court was the question of jurisdiction of the inferior tribunal. *People* v. *Van Alstyne*, 32 Barb. (N. Y.) 134 ; *Hamilton* v. *Harwood*, 113 Ill. 154 ; *Tallmadge* v. *Potter*, 12 Wis. 352 ; *Williamson* v. *Middlesex*, 42 N. J. L. 397 ; *Whitney* v. *Board, etc.*, 14 Cal. 500 ; *Varrel* v. *Church*, 36 Wis. 318 ; *Chicago, etc., Railroad* v. *Fell*, 23 Ill. 335 ; Evans Pr. 388 ; *Bates* v. *District of Columbia*, 1 MacA. 443–449 ; *Insurance Co.* v. *Tallmadge*, 3 MacA. 422 ; Works, Courts and Juris. 700.

The writ of *certiorari* must be personally served on the persons to whom it is directed, and it takes effect only from the time of such service. All proceedings subsequent to the service or delivery of the writ are erroneous. *Patchin* v. *Mayor*, 13 Wend. 664 ; *McQuade* v. *Emmons*, 38 N. J. L. 397 ; *Case* v. *Sheperd*, 2 Johns. Cas. (N. Y.) 27 ; *State* v. *Commissioners*, 41 N. J. L. 93 ; *Baker* v. *Supreme Court*, 71 Cal. 583 ; *Ewing* v. *Thompson*, 43 Pa. St. 372 ; 1 Tidd's Practice, 404–405 ; Evans' Practice, 387–388.

The general rule is that the writ of *certiorari* does not lie to remove a cause from an inferior court *after* judgment signed there ; even when the inferior court is one proceeding contrary to the rules of the common law. *Walker* v. *Gann*, 7 Dowling & Ryl. 769 ; 1 Tidd Practice, 38. The only exception to the rule seems to be when the inferior tribunal has exceeded its jurisdiction. Evans' Practice, 389 ; *Richardson* v. *Smith*, 59 N. H. 319.

It is well established as a general rule that when the party aggreived can obtain redress by appeal or writ of error he will not be allowed this unusual remedy (*certiorari*). *Poe* v. *Machine Works*, 24 W. Va. 517 ; *Witkowski* v. *Skalowski*, 46 Ga. 41 ; *People* v. *Farwell*, 4 Mich. 556 ; *Milwaukee Iron Co.* v. *Town*, 29 Wis. 450 ; *Ishpeming* v. *Maroney*, 49 Mich. 226 ; *Harris* v. *Barber*, 129 U. S. 366. Where a party loses his appeal by his own negligence he cannot bring the case up for review by *certiorari*. *Ex parte Dries*, 3 App. D. C. 168 ; *Darmstaidter* v. *Armour*, 17 Ill. App. 285.

2. The affidavits of appellee and his counsel filed in the Supreme Court in answer to the motion to quash in this case, are not part of the record and should therefore not have been considered on the hearing below, nor should they be considered in this court.   In *certiorari* the matter is to be decided upon the record alone.   *Hoiles* v. *United States*, 3 MacA. 371 ; *Wash. Market Co.* v. *Summy*, 3 MacA. 59.   The affidavits were inadmissible.   *Ross* v. *Ellsworth*, 49 Me. 417 ; *Newcomb* v. *Town*, 24 Wis. 459–466 ; *Den* v. *Commissioners*, 109 Ill. 383.

3. The court erred in granting said writ of *certiorari* on the sole ground of concurrent jurisdiction.   The writ of *certiorari* is not a matter of right, and its use should not be increased but rather restricted.

*Mr. Clarence A. Brandenburg* for the appellees :

1. The court below, in the exercise of a sound discretion, had the right to issue the writ of *certiorari after* judgment, and when issued *before* judgment, as in this case, it had the right to retain the cause for trial.   The exercise of such discretion on the part of the court below is justified on principle and authority, and is within the rule announced by the old Supreme Court of the District of Columbia in General Term, and as actually followed in practice in many instances.   Such a discretion, when authorized, and when reasonably exercised, as in this case, should not be disturbed on appeal.

We have no statutory provision upon the subject of *certiorari*, and the writ, as applied in this jurisdiction, is the common law writ.   It is an extraordinary remedy, resorted to for supplying defects of justice in cases obviously entitled to redress.   Its extraordinary character is itself evidence of its application to extraordinary cases.   *Poe* v. *Machine Works*, 24 W. Va. 517 ; *Beasley* v. *Beckley*, 28 W. Va. 81.

The common law writ of *certiorari* may issue before or after judgment, in the discretion of the court.   *Stone* v.

*New York*, 25 Wend. 167 ; *People* v. *Alleghany County*, 15 Wend. 198 ; *People* v. *McDonal*, 2 Hun, 753 ; *Starr* v. *Rochester*, 6 Wend. 98 ; *Comstock* v. *Porter*, 5 Wend. 98 ; *Parsonfield* v. *Lord*, 23 Me. 511 ; *Ludlow* v. *Ludlow*, 4 N. J. Law, 444 ; *Bliss* v. *Enslow*, 3 Ohio, 269. In *Matthews* v. *Matthews*, 4 Ired. Law (N. C.) 155, it was held that where a tribunal proceeds in a summary manner, not according to the course of the common law, a *certiorari* for *review* should be granted *ex debito justitiæ*.

The court will exercise its sound discretion in granting the writ of *certiorari*, even though the party has some other adequate remedy. *People* v. *Board of Health*, 33 Barb. 344 ; *People* v. *Queens Co.*, 1 Hill, 195 ; *People* v. *Donahue*, 15 Hun, 418.

A *certiorari* at common law goes to special and summary tribunals and brings up the proceedings at any stage of the case. In England, and in all the States where the common law writ of *certiorari* has been retained, the writ will be allowed during any stage of the proceedings, as well before as after the final judgment. *Mackavoy* v. *Com.*, 2 Va. Cas. 268 ; *Williamson* v. *Carnan*, 1 G. & J. 196; *Iron Co.* v. *Wilson*, 22 Ind. 73.

2. *Certiorari* and appeal are concurrent remedies. *State* v. *Crowley*, 39 N. J. Law, 259 ; *State* v. *Stanger*, 49 N. J. Law, 192 ; *Wheeler* v. *Carty*, 53 N. J. Law, 336 ; *Railroad* v. *Coleman*, 2 Tex. App. Civ. Cas. 548 ; *People* v. *Perry*, 16 Hun, 462 ; *Williams* v. *Bigelow*, 2 How. Pr. 87 ; *Ray* v. *Parsons*, 14 Tex. 371 ; *Roser* v. *Marlow*, R. M. Charlt. (Ga.) 543 ; 2 Chitty Gen. Practice, 374.

And even in cases where the remedies are not concurrent, it is within the judicial discretion of the court to grant *certiorari* when an appeal is open to the petitioner.

3. Where appeal is lost by accident or mistake *certiorari* will lie, on reasonable showing. *Wood* v. *Randle*, 5 Hill, 269; 15 Hun, 418 ; *Kelsey* v. *Jervis*, 8 Ired. 451 ; *Trigg* v. *Boyce*, 4 Hayw. (Tenn.) 101 ; *Cox* v. *Kent*, 9 Baxt. 492 ; *Sharpe* v. *McEwell*, 8 Jones (N. C.), 115. If from the

facts as disclosed by the petition in the *light of surround-ing circumstances*, it is apparent that the petitioner has been guilty of no laches, and that the failure to perfect his appeal has been due to unavoidable accident or to his blameless misfortune, it is customary to allow the writ as a substitution for an appeal lost. *Betts* v. *Franklin*, Dev. (N. C.) 467 ; *Skinner* v. *Maxwell*, 67 N. C. 257 ; *Winborn* v. *Byrd*, 92 N. C. 9 ; *Hodges* v. *Lassiter*, 94 N. C. 294 ; *Ahrens* v. *Giesecke*, 9 Tex. 432 ; *Poe* v. *Machine Works*, 24 W. Va. 520 ; *Wood* v. *Mynch*, 9 Minn. 139 ; *District of Columbia* v. *Gas Light Co.*, 3 Mack. 350 ; *Railroad Co.* v. *Coleman*, 2 Tex. App. 548 ; *Snapp* v. *Thomas*, 5 Lea, 503 ; *Adams* v. *Abrams*, 38 Mich. 302 ; *McDonald* v. *Williams*, 41 Ill. App. 378 ; *Hardin* v. *Williams*, 5 Heisk. 390 ; *Williamson* v. *Boykin*, 99 N. C. 240 ; *Ritter* v. *Kunkle*, 39 N. J. Law, 267. If, therefore, the writ can issue after judgment, as is shown by the foregoing authorities, how much more ought it to be so when actually issued before judgment, but by accident is delayed in service for an hour only. See Bacon's Abr., title Certiorari, sub-sec. G, p. 178.

This court ought not to notice parts of a day in a matter of this character. If a writ actually issues before judgment, and is served on the day on which judgment is rendered, it relates back to the beginning of the day and vitiates any proceedings had during that day, particularly when the action taken operates to deprive a man of his property rights without an actual hearing and without fault on his part.

The return of the magistrate is evidence only of facts properly forming part of his record. The unusual return made by the justice of the peace to the writ issued herein, involving a statement as to the length of time which elapsed between the rendition of judgment and the receipt thereof, forms no part of the record, and cannot be considered as evidence.

The affidavits in this case were filed in the Supreme Court of the District of Columbia, and became part of the

record of that court; and for the purpose of enlightening itself as to the true and actual facts attending the issuance of the writ, and for the purpose of enabling the court to exercise its sound discretion, which the law warranted, were properly considered by the court, and read. *People* v. *Queens Co.*, 1 Hill, 195.

Mr. Justice MORRIS delivered the opinion of the Court:

There are five alleged errors assigned by the appellants, but they only raise in various ways these two questions: 1st. Whether, upon the ground of concurrent jurisdiction, the Supreme Court of the District of Columbia was right in assuming jurisdiction of the cause, under the writ of *certiorari*, for the purpose of a trial *de novo*, regardless of the judgment therein rendered by the justice of the peace; and, 2d. Whether it was error to permit the reading of the affidavits above mentioned over the objection of counsel for the appellants. But this second question is not raised in such manner as that we can consider it. There is nothing in the record to show that these affidavits were read before the court, or acted upon by it, or to show that the appellants made any objection thereto, or took any exception to any ruling of the court in regard to them. They are inserted in the record without anything to show what part they played in the proceedings; and the statement in the brief that they were read at the hearing over the objection of the appellants is not a statement that we can consider. The second question, therefore, is not one for our consideration.

The first question, however, seems to be fairly presented by the record. And that is, whether the Supreme Court of the District of Columbia, under the concurrent jurisdiction which it has with justices of the peace over such cases as that which the appellants had caused to be instituted in this instance, has the right by writ of *certiorari* to require the removal to itself for its own cognizance of a cause instituted before a justice, notwithstanding that a judgment may

have been rendered in the cause before the service of the writ of *certiorari* upon the justice.

For nearly twenty-five years the practice has been general of resorting to a writ of *certiorari* issuing from the Supreme Court of the District of Columbia to remove a cause from the jurisdiction of a justice of the peace, at the instance of a defendant sued before such justice, merely upon the allegation and showing of concurrent jurisdiction in the court, and thereupon to have the trial of the cause proceed in the court as though it had been instituted there in the first instance.

This practice seems to have been established by a decision of the General Term of the Supreme Court of the District of Columbia in the case c *Coleman* v. *Friedman*, 1 MacA. 160, decided in the year 1873. The opinion in the case is exceedingly brief, and does not seem to have received very great consideration. It is as follows:

" Upon the direct authorities cited by the counsel for the petitioner sustaining such a use of the writ (of *certiorari* ), the court were all of the opinion that it will lie in this case. And as there is no provision for the removal of cases after a jury trial by appeal to this court, the proper course is to bring it here by *certiorari*, when the amount in controversy is evidently within the jurisdiction of the court. Motion to quash denied."

The authorities referred to were the case of *Cross* v. *Smith*, 2 Ld. Raymond, 836 ; the same case in 7 Modern Rep. 138 ; Evans' Practice, p. 389 ; and 1 Tidd's Practice, p. 397.

Both Evans and Tidd undoubtedly countenance the doctrine. The former in his Treatise on the Common Law Practice in the State of Maryland, which we have adopted to a very considerable extent as a guide to our practice in this District, says :

" The second class of cases, in which *certiorari* may issue, is of less importance than the one we have been discussing ; and is in fact, we believe, confined to the city of

Baltimore.    It grows out of the existence of a superior and
inferior court having jurisdiction of the same subject-matter
For, in such a case, the defendant may choose to be sued
in the superior court; and if the plaintiff proceed in the in-
ferior, he may have a *certiorari* to bring the case before the
superior, to be there decided.    The only place in which
any such concurrent jurisdictions exist is in the city of Bal-
timore, where justices of the peace and the county court
have concurrent jurisdiction in actions for the recovery of
debts between fifty and one hundred dollars."    (Page 389).

And the authority cited for this proposition is the case of
*Cross* v. *Smith*, 1 Salkeld, 148.

Mr. Tidd says (p. 398): " This writ (of *certiorari* ) may be
sued out before or, in some cases, after judgment ; and lies
in civil actions before judgment in the King's Bench or
Common Pleas, in all cases where these courts have juris-
diction and can administer the same justice to the parties as
the court below ; and though the cause cannot be deter-
mined in the court above, yet this writ may be granted if the
inferior court have no jurisdiction over it, or do not pro-
ceed therein according to the rules of the common law."
For the latter part of this proposition the authority cited is
1 Lilly's Practical Register, p. 253; but for the former part
no authority is cited.   The author, however, goes on to say:
"A *certiorari* also lies to remove a cause from the court of
the Isle of Ely, or from the *Cinque Ports*, or other exempt
jurisdiction.". And for this the authorities cited are, in
reference to the *Cinque Ports*, the statement in Lilly's Reg-
ister just mentioned, and in reference to the Isle of Ely the
case of *Cross* v. *Smith*, 1 Salk. 148 ; 2 Ld. Raym. 837 ; 7
Mod. Rep. 138.

So that it is evident that the ultimate authority for this
doctrine was the case of *Cross* v. *Smith*, in which the Court
of King's Bench, by Lord Chief Justice HOLT, held that a
writ of *certiorari* would lie from the Court of Common
Pleas to the Court of the Bishop of Ely, at the instance
of a defendant in the latter court, to remove therefrom a

cause for trial in the Common Pleas on the ground of the concurrent jurisdiction of the Common Pleas. The statement of the case and of the grounds of the decision, as given in the reports of Lord Raymond, is worthy of our consideration. It is thus given by the reporter:

" Error upon a judgment given in the Court of the Bishop of Ely in case for words spoken the 25th of March, 12 Will. 3, of the plaintiff. The error assigned was, that a *certiorari* issued out of the Common Pleas, *teste* the 12th of February, 12 Will. 3, returnable in Easter Term following, to remove the cause, and it was allowed, and nevertheless they proceeded afterwards to give a judgment for the plaintiff. The defendant in error pleaded a grant to the Bishop of Ely of conusance of pleas, and an allowance of it in this court, 21 Edw. 3, and that the cause of action arose within the jurisdiction of the said court, and that this matter was returned to the Common Pleas upon the writ of *certiorari*, and that so the Court of Ely had good authority to proceed, &c. To this plea the plaintiff in error demurred. And it was argued several times at the bar. * * * And the points made were, 1st. Whether a *certiorari* lay out of the Common Pleas to the Court of Ely; 2d. If it lay, whether it would be a supersedeas to their proceedings. And the whole court held the affirmative. And Holt, Chief Justice, said that there are three sorts of inferior jurisdictions. The first is *tenere placita*, which is the lowest, and is a concurrent jurisdiction ; in which case the plaintiff may proceed in the inferior court, if he will ; but that does not deprive the subject of having it tried in a superior court (if he will) of the King's ; and that for good reason ; for if it were otherwise, a man who comes by chance into an inferior jurisdiction, might be arrested there, and detained in goal a long time for want of bail. The second sort is conusance of pleas, which is by grant to some lord of the franchise ; and it is he alone who can take advantage of it, neither the plaintiff nor the defendant, for he cannot plead it to the jurisdiction of the court ; but the lord of the franchise, by his bailiff or

attorney, must come in and claim the franchise ; and though the lord ought to have the action, yet this court is not ousted by it, but the plea remains under the control of this court, for day is given here upon the roll to the parties to be in the inferior court on a day certain, and the parties are commanded there, and the tenor of the record of this court is sent for the inferior court to proceed, and if justice is done there, all is well, but the record is here ; and if justice is not done there, as if the court does not proceed upon the day prefixed, or if the judge misbehaves himself, &c., the plaintiff shall have a re-summons.   And it is the benefit of the lords only that is considered in this matter.   But these jurisdictions were hardships to the subject, and allowed by 27 Hen. 8, chap. 24, rather for their antiquity than for any other reason, and they were detrimental to the prerogative of the Crown, and therefore *certioraris* were always allowed to prevent the grievances of these inferior jurisdictions. The third sort are exempt jurisdictions, as where the King grants to a city, &c., that the inhabitants shall be sued within the city, and not elsewhere.   Such a grant may be pleaded to the jurisdiction of the King's Bench, &c., if there is a court there that can hold plea of the cause.   But nobody can take advantage of it but the defendant ; and if he sues a *certiorari*, it will remove the cause, because the defendant has waived his privilege for his own benefit ; so that there is no jurisdiction that can resist a *certiorari*. * * *   As to the distinction taken between the King's court and that of lords of franchises, that a *certiorari* will lie to the former, but not to the latter, it is no concern to the subject to whom the court belongs.   Farther, suppose that the King grants to a corporation, that the mayor and aldermen shall be justices of peace, and that they shall hold a court of sessions, this franchise is as much a right to the town, as this of the Bishop of Ely ; and yet in common experience *certtoraris* are granted to them every day."

And so in that case the judgment was reversed by the unanimous decision of the whole court.

We have been careful to give the report of this case in full, because it is the foundation on which has been built the whole superstructure of the law of *certiorari* in cases of concurrent jurisdiction.   But upon an examination of the case we fail to find that it justifies the inference that has been drawn from it to the full extent of that inference. Undoubtedly it supports the theory that the courts of general jurisdiction in England and all similar courts in our own country, may, by writ of *certiorari*, restrain all courts of inferior jurisdiction, when not proceeding in accordance with the course of the common law, from exceeding their authority.   But we cannot regard the case as giving countenance to the proposition, that, when the legislature, for the facility of the transaction of the smaller affairs of life, and for the relief of the courts of general jurisdiction from the overcrowding of their dockets, vests in justices of the peace or in other courts of inferior or limited jurisdiction, the cognizance, concurrent with the courts of general jurisdiction, of causes involving only small amounts, but of which the courts of general jurisdiction may have had exclusive cognizance, these courts may forthwith practically nullify the legislative enactment by still drawing to themselves the same exclusive cognizance of such causes through the instrumentality of a writ of *certiorari*.   For if it is the right of a defendant in the court of a justice of the peace to have his cause removed by writ of *certiorari* to the court of general jurisdiction on the ground of concurrent jurisdiction, it is the duty of the latter tribunal to grant the writ in all cases where the concurrent jurisdiction is shown, and to take exclusive cognizance of all such cases to itself.   This undoubtedly would be judicial nullification of a most remedial legislative enactment.   We are quite sure that this cannot be sustained by reason, and we do not think that it can be sustained by authority.

The case of *Cross* v. *Smith* is not authority to that effect. Under the system of feudalism, so long prevalent in England, courts had arisen different from the courts of the sov-

ereign or of the state, and practically independent of them ; here, at all events, and for this present purpose, we must regard the sovereign and the state as being one and the same, which for many ages they were both in fact and in law.    And these feudal courts administered justice both in civil and in criminal cases, under certain limitations, in their own way, sometimes perhaps better than the courts of the sovereign at Westminster, but always in derogation of the common right and of the common authority of the realm. It was always the effort of the courts of the sovereign at Westminster to restrain these sporadic tribunals in the exercise of their jurisdiction ; and for that purpose recourse was not infrequently had to what we would now call judicial legislation ; then justifiable enough, perhaps, in view of the fact that there were no parliaments worthy of the name to enact suitable legislation.    This was only part of the general effort for the evolution of national union and national homogeneity out of the discordant elements of feudalism.    The courts which it was sought to check were not courts of the state, but courts of the feudal lords antagonistic to the courts of the state.    The effort to check them was the effort to destroy a rival and antagonistic system, not a purpose to coerce or restrain a purely co-ordinate branch of the judiciary.    It is plain, therefore, that the reason for that effort and for the coercion so exercised can have no application to courts, however inferior and limited their jurisdiction may be, which have been created by express legislative enactment of the state itself for the common and general good ; for the relief of the courts of general jurisdiction, and for the transaction of the general judicial business of the state involving only small amounts of money, with which the courts of general jurisdiction should not be occupied to the exclusion of more important business.

It is a maxim of the law that, when the reason for a law ceases, the law itself should cease.    With much greater propriety can it be said that a rule merely of judicial con-

struction, based upon conditions antagonistic to the general spirit of the law, should not be extended to conditions directly the reverse, although perhaps embraced within the letter of the rule.    A court of concurrent jurisdiction, deriving its authority merely from feudal usage and the grant of some despotic monarch in the old feudal times, might well be coerced and restrained, even to the extent of antagonism, by the courts of the sovereign of general jurisdiction, when no such coercion would be proper with respect to courts of concurrent jurisdiction, even though inferior and limited, and to be rigidly restricted to the express jurisdiction conferred upon them, which have been created by the sovereignty itself by express enactment for a general purpose.    We do not think that the case of *Cross* v. *Smith* was ever intended to apply to such statutory courts or to the concurrent jurisdiction vested in such courts by statutory enactment. ·

It will be noticed that the decision in that case was based, not so much on the fact that the court of the Bishop of Ely was an inferior court and the Common Pleas a court of superior jurisdiction, but rather on the fact that the latter was the court of the sovereign of the State, wherein it was the common right of all the subjects to have their causes tried, and the court of the Bishop of Ely was the private court of a feudal baron derogatory to the common right.

Since the passage of the act of Congress of February 22, 1867 (14 Stat. 403), concurrent jurisdiction over civil controversies involving fifty dollars and upwards, but not exceeding one hundred dollars, had been vested both in the Supreme Court of the District of Columbia and in courts of justices of the peace.    The concurrence of jurisdiction was nowhere expressly declared ; it was simply the result of the legislation on the subject.    For, by the act of Congress of March 1, 1823 (3 Stat. 743), exclusive jurisdiction of amounts not exceeding fifty dollars had been given to justices of the peace, and exclusive jurisdiction of all amounts over that sum remained in the Circuit Court, the tribunal of

general jurisdiction then existing, to which the Supreme
Court of the District of Columbia succeeded by the act of
Congress of March 3. 1863 (12 Stat. 763).   Thereafter the
act of February 22, 1867, above mentioned, which was sub-
sequently included in the Revised Statutes of the United
States for the District of Columbia as sections 997 *et seq.*,
provided that justices of the peace should have jurisdiction in
all cases where the amount claimed to be due should not
exceed $100, with certain specified exceptions.   There was
no provision for the exclusion of the jurisdiction of the Su-
preme Court of the District where the amount was between
$50 and $100; and under a well known rule of law with
respect to courts of general jurisdiction, it resulted that, in
regard to that class of cases, the jurisdiction became con-
current, and was so held.

By the act of Congress of February 19, 1895 (28 Stat.
668), the jurisdiction of justices of the peace in civil cases
was greatly enlarged.   By section 1 of that act it was pro-
vided that they should have jurisdiction to hear, try and
determine all civil pleas and actions, with certain specified
exceptions, where the amount sought to be recovered did
not exceed $300.   And by section 2 it was provided that
their jurisdiction should be exclusive original jurisdiction
where the amount claimed should not exceed $100, " *and
original and concurrent with the Supreme Court of the Dis-
trict of Columbia*" where the amount claimed was more
than $100 but should not exceed $300, the right of trial
by jury being expressly reserved to either party where the
sum claimed exceeded $20, in accordance with the require-
ment in the Constitution to that effect.   There was also
some regulation of the right of appeal to the Supreme
Court of the District from the judgments of the justices,
which right remained substantially the same as under pre-
vious law, which entitled the appellant to trial *de novo* in
the appellate court; and likewise a grant of authority to
that court to make all necessary rules of practice to carry
the act into effect.   Here, as will be perceived, *concurrent*

*jurisdiction* was expressly granted to justices of the peace ; but it is not conceived that this materially alters the conditions previously existing by implication of law, except perhaps by emphasizing the grant and enlarging the amounts.

Now, concurrent jurisdiction under our law, however it arises, necessarily means equal and co-ordinate jurisdiction ; and it would be an absurdity to assume that one of the co-ordinate tribunals might practically nullify the statute and engross the whole jurisdiction to itself by prohibition, through the writ of *certiorari* or otherwise, to the other tribunal to proceed. The concurrent jurisdiction, which the statute expressly confers upon justices of the peace, would be wholly lost or destroyed, if, at the mere suggestion of the defendant, the Supreme Court of the District of Columbia should compel the transfer to itself for trial of all causes over which the concurrent jurisdiction was declared by the act of Congress. This would leave to the justices of the peace only such cases as both parties should agree to leave to them, and would contravene the whole spirit and purpose of the statute, which evidently contemplated the removal of such causes to a great extent from the court of general jurisdiction. It would give to the defendant, without any just reason for it, the selection of the tribunal in which a cause is to be tried, when such selection more properly belongs to the plaintiff, where there is more than one tribunal that can take cognizance of the cause. It would give a defendant the right of going without bond to a court to which, under the right of appeal otherwise reserved to him, he could not go except upon giving security. Moreover, the right of removal of a cause from one justice of the peace to another for good reason shown, given by section 1004 of the Revised Statutes of the United States for the District of Columbia, is wholly inconsistent with an unlimited right of removal to the Supreme Court of the District without any cause shown other than that of concurrent jurisdiction.

It can make no difference in this regard that the Supreme Court of the District of Columbia is a court of record and proceeds more regularly in accordance with the course of the common law ; and that a rather anomalous condition of things may result from the exercise of the jurisdiction by justices of the peace in cases where the amounts in dispute would justify the intervention of a jury under the Constitution and the statute. Either we must deny to Congress the right to enlarge the jurisdiction of justices of the peace beyond the limit at which the right of trial by jury is secured, inasmuch as the justice seems to have no right to instruct or control the jury, which may possibly have been the intention of the framers of the Constitution ; or else it must be conceded that the anomaly of a justice of the peace presiding over a jury, which he has no power to instruct or control, is no sufficient reason for holding that the act of Congress may be nullified through the operation of the writ of *certiorari.* Congress has conferred concurrent jurisdiction upon justices of the peace in most ample terms ; and we are bound to presume that the jurisdiction was intended to be exercised. There is certainly no warrant for supposing that it depended upon the volition of the co-ordinate and superior tribunal whether that jurisdiction should be exercised or not. The right of appeal and of trial *de novo* under the appeal is given by statute ; but that is no reason why the exercise of jurisdiction leading up to that right should be prohibited through the writ of *certiorari.* Rather, it tends to show the contrary. It is no reason against the exercise of the jurisdiction that undesirable complications may arise from it ; that is a matter for the legislature, and possibly to some extent for regulation by the Supreme Court of the District of Columbia under the grant of power to it to prescribe rules of practice to carry the act into effect.

The use of a writ of *certiorari* for the purpose of transferring a cause for trial from one court of concurrent jurisdiction, even though an inferior court, to another court of

concurrent jurisdiction, even though it be a superior court and a court of general jurisdiction, when the jurisdiction has been declared by statute to be concurrent, we must regard as wholly unwarranted and unauthorized by law. The proper purpose of the writ of *certiorari* under the common law is merely to determine whether a court which seeks to proceed with a cause has jurisdiction so to do. *Harris* v. *Barber*, 129 U. S. 366; *Gaither* v. *Watkins*, 66 Md. 576; *Williamson* v. *Carnan*, 1 G. & J. 197; *People* v. *Betts*, 55 N. Y. 600; *Hamilton* v. *Harwood*, 113 Ill. 154; *Whitney* v. *Board*, 14 Cal. 500; *Varrel* v. *Church*, 36 Wis. 318. And for this purpose ordinarily it will lie either before or after judgment, unless there is a right of appeal, in which case it will not lie after judgment for obvious reasons. For a writ of *certiorari* cannot be made a substitute for a writ of error or to serve the purposes of an appeal. *Harris* v. *Barber*, 129 U. S. 366. In States where a different rule prevails, it appears to be under statute. See also, *Deffer* v. *Kimball*, 7 App. D. C. 499.

There are cases where, through inadvertence, accident or mistake, the right of appeal has been lost, and recourse has been allowed to the writ of *certiorari*, and it is argued here on behalf of the appellee that he should have the writ on that ground. But no such ground is made in the pleadings or stated in the petition, where the sole ground alleged for it is that of the concurrent jurisdiction of the court. Consequently, the authorities cited in that regard have no application whatever to the case before us.

Under the statute, the justice of the peace had jurisdiction of the subject-matter in controversy between the parties to this cause, concurrently with the Supreme Court of the District of Columbia. He had acquired jurisdiction of the case by the suit of the plaintiff and service of process upon the defendant. It is well settled law that, as between courts of concurrent jurisdiction, that which first acquires jurisdiction should retain it and proceed to the final determination of the case. *Ward* v. *Todd*, 103 U. S. 327; *Ober*

*v. Gallagher*, 93 U. S. 199; *Sharon* v. *Terry*, 13 Sawy.
387; *Brooks* v. *Delaplaine*, 1 Md. Ch. 354. Most of the
cases upon this point, it is true, are as between courts of
general jurisdiction, different courts of equity, courts of
equity and courts of law, or Federal courts and State
courts; but the principle is equally applicable to all courts
of concurrent jurisdiction.

The justice of the peace having thus acquired jurisdiction
of the case, his jurisdiction thereupon became exclusive,
subject to the right of the defendant to the removal of the
case before another justice, as hereinbefore stated, and sub-
ject also to the right of either party to an appeal after judg-
ment, and thereupon a trial *de novo* in the Supreme Court
of the District of Columbia; and that jurisdiction could not
be ousted by the issue of a writ of *certiorari* out of that
court. Especially could it not be ousted after judgment
rendered, when no other or further trial could be had, ex
cept by the way of the appeal pointed out by the statute.
The authorities on this point, except in States where, as we
have indicated, *certiorari* may by statute be used by way of
appeal, are practically unanimous.

That the writ of *certiorari* in this instance was served
after judgment rendered, is conclusively shown by the re-
turn of the justice of the peace. Even if it had been sued
out and placed in the hands of the marshal before judgment
rendered, that would not avail the appellee. We learn of
such action only from the affidavits; and we have stated
that those affidavits do not come before us in such manner
as that we can consider them. But in any event the au-
thorities seem to us to be conclusive that it is the service of
the writ, and not its issue, that, in the absence of fraud,
must determine the jurisdiction of the justice to proceed.
Bacon's Abridgment, Title *Certiorari.* And this seems to
us to be the dictate of reason. For how was the justice to
take notice of the writ and stop his proceedings until notice
was actually given to him? And this notice was given to
him only by the service of the writ upon him.

We are of opinion, therefore, that it was error in this case for the Supreme Court of the District of Columbia to issue the writ of *certiorari* for the removal into that court for trial of the proceedings instituted before the justice of the peace upon the ground merely of concurrent jurisdiction by law over the subject-matter of the proceedings ; and we are of opinion also that, after judgment rendered by the justice of the peace before the service of the writ upon him, the writ of *certiorari* became nugatory and ineffectual for the removal of the cause, and could not be made to serve the purpose of a writ of error or appeal.   And we think, also, that it was error, upon the return made by the justice of the peace, not to quash the writ.

*The cause, therefore, must now be remanded to the Supreme Court of the District of Columbia, with directions to quash the writ of certiorari and to dismiss the appellee's petition in the cause, with costs to the appellants.   And it is so ordered.*